## JERRY RAY LAMB, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 7315

December 21, 1973　　　　　　　516 P.2d 1405

*Lohse and Lohse, Chartered,* of Reno, for Appellant.

*Robert List,* Attorney General, Carson City, and *Charles Waterman,* District Attorney, Mineral County, for Respondent.

## OPINION

By the Court, Mowbray, J.:

Jerry Ray Lamb appeals to this court from an order of District Judge Kenneth L. Mann denying Lamb's pretrial motion to suppress evidence.

On December 18, 1972, Lamb and a codefendant, not a party to this appeal, were charged with possession of marijuana in violation of NRS 453.030. During a preliminary hearing held on December 22, 1972, counsel for Lamb objected to the admission in evidence of the marijuana, which the police officers had found in Lamb's home. The magistrate overruled the objection and ordered Lamb to stand trial in the district court. On February 16, 1973, Lamb filed a motion to suppress the

evidence, claiming that the search was invalid and that the evidence obtained therefrom should be suppressed. The district judge denied the motion, and Lamb now appeals.[1]

1. *The Facts.*

Shortly before midnight on December 11, 1972, officers of the Mineral County Sheriff's Department, accompanied by a Nevada highway patrolman, investigated a burglary at Culbertson Motor Supply in the town of Hawthorne, Nevada. Numerous tracks had been left in the snow around the building where the burglary had taken place, and Officer Gifford of the highway patrol discovered a set of footprints in the fresh snow that led from Culbertson Motor Supply to the side door of the residence of the appellant, Lamb. Gifford and Sheriff's Deputy Charles Gaw proceeded to the residence and knocked on the side door where the footprints terminated. After a short delay, the door was opened by Lamb, who had apparently been awakened by the knocks on the door. When Lamb inquired as to the purpose of the visit, Deputy Gaw advised him that there had been a burglary in the vicinity, that the tracks led to Lamb's door, and that Gaw wished to ask Lamb some questions.

Lamb stated, in response, that he had been in the residence for some time, and that he did own a pair of "dingo" boots similar to those which had made tracks in the snow. When asked if the officers could see the boots, Lamb replied that they could. Officer Gifford asked if they could come in the house, and defendant-appellant readily admitted them to the living room. Lamb then showed his boots to Deputy Gaw, who examined them and found them to be dry. Lamb made further inquiry about the visit and asked what had been taken from the burglary. Deputy Gaw advised him that a burglary had occurred down the alley and that the tracks came to his door. When Officer Gifford asked Lamb if he could look around inside the house, Lamb replied that he didn't care and that the police officers could look anywhere they wanted.

Officer Gifford then proceeded into the kitchen and in a kitchen cabinet found a brown paper sack containing 3 baggies of what appeared to be marijuana. In a storage compartment in the stove, he found a shopping bag that contained 25 baggies of what appeared to be marijuana. Deputy Gaw then advised Lamb of his constitutional rights and placed him under arrest for possession of a controlled substance.

---

[1]Such orders are no longer appealable. Stats. Nev. 1973, ch. 730, at 1489–1490.

## 2. The Consent of Search.

The State contends that the seizure of the marijuana was lawfully permissible because Lamb had given the officers a valid consent to search his home.

The question then is: What must the State present to prove the voluntariness of the consent? Lamb has urged on this appeal that the State must prove that the one giving the permission to search knew in fact that he had a right to withhold his consent. The recent case of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041 (1973), held that when a subject of a search is not in custody and the State wishes to justify a search on the basis of consent, the Fourth and Fourteenth Amendments require that the State must demonstrate that the consent was in fact voluntary, and that "voluntariness" is to be determined from the totality of the surrounding circumstances. The High Court in Bustamonte specifically ruled, however, that, while knowledge of a right to refuse consent is a factor to be taken into account, the State need not prove that the one giving permission to search knew that he had a right to withhold his consent.

We turn to examine the totality of the circumstances surrounding Lamb's consent to the search. The officers knew that a burglary had occurred. Foot tracks from the burglarized building led to Lamb's residence. The police officers explained to Lamb what had happened and the reason they had come to his home and that they were investigating a criminal act. The officers did not assert a right to search, nor did they make other statements that would reflect that Lamb was submitted to an assertion of authority. When Officer Gifford requested of appellant that he be allowed to look through the house, Lamb stated to Gifford, "You can look anywhere you want; I don't care." The record shows that Lamb consented to a general search of his premises. There is no evidence of coercion, express or implied. The record supports the judge's finding that Lamb freely and voluntarily gave his consent to search his home.

The order of the district court denying Lamb's motion to suppress is affirmed.

THOMPSON, C. J., and GUNDERSON, BATJER, and ZENOFF, JJ., concur.